*J. A. Wilkes,* for plaintiff in error.

*W. L. Clay, Shipp & Kline,* contra.

---

## 2336.   WILKINS *v.* McMAHAN.

1. Upon the trial of a plea in abatement, filed upon the ground that the plaintiff had reinstituted his action after dismissal without payment of the costs due in the first suit, it appeared that the plaintiff went to the clerk of the court in which the suit was pending and paid what the clerk said was the amount of the costs and took a receipt for it, and was not informed of any additional costs being due until after the second suit had been brought, when, for the first time, it appeared that there was a small item of costs which had not been included in the bill so rendered by the clerk.    *Held,* that a finding against the plea in

abatement was authorized, there being nothing to impeach the good faith of the transaction. ·

2. The plaintiff took from one who was in fact his cropper an instrument reciting that the relation between them was that of landlord and tenant, and creating a lien in the sum of $300, for supplies to be furnished, and this was transferred by the plaintiff to the defendant, who, however, was cognizant of the actual relation existing between the parties. The cropper not only traded out with the defendant the '$300 mentioned in the written lien, but also made with him an additional account of some $200. In the fall and before there had been a final division of the crops, the cropper delivered to the defendant enough of the crops to amount to more than $300, and additionally delivered to him the three bales of cotton for which the plaintiff sued. *Held*, that as the cropper had delivered to the defendant more than enough of the crops to satisfy the amount of the lien stated in the instrument in which the relationship of landlord and tenant was recited, and as the defendant was not actually otherwise deceived as to the true relationship existing between the landlord and the cropper, the plaintiff was not estopped from asserting title to the three bales of cotton in dispute as being his by virtue of the relationship of landlord and cropper.

(a) The plaintiff was not estopped from showing the true relationship existing between him and his cropper by reason of the fact that he had sued out a distress warrant alleging the cropper to be a tenant, it appearing that this distress warrant was sued out under a misapprehension and was dismissed when the mistake was discovered. While the fact of the suing out of the distress warrant was in the nature of an admission on the part of the plaintiff, it was not a conclusive or unexplainable admission.

3. The verdict appears to be correct, under the evidence.

DECIDED SEPTEMBER 6, 1910.

Trover; from city court of Monroe—W. S. Upshaw, judge pro hac vice. October 27, 1909.

*W. O. Dean*, for plaintiff in error. *Napier & Cox*, contra.

POWELL, J. McMahan recovered a judgment in trover against Wilkins for three bales of cotton, and Wilkins excepts. It appears that Atkinson was a cropper of McMahan's. During the year (in the month of May) McMahan, in order to arrange for the furnishing of supplies, caused Atkinson to execute to him a note for $300, reciting that McMahan was landlord and that Atkinson was tenant, and that the note was given for the purpose of creating a lien for supplies to make the crops raised on the premises; and McMahan transferred this instrument to Wilkins. Wilkins, however, knew that the relationship between McMahan and Atkinson was that of landlord and cropper; i. e. he knew, as he himself testified, that Atkinson was working the crop "in halves," which is a common

way of describing a cropper contract.    Atkinson not only traded out with Wilkins the $300 named in the written lien; but also made an additional account for nearly $200.    In the fall, after Atkinson had paid about $400 to Wilkins out of the crops, he delivered to him the three bales of cotton in question.    While there had been a tentative division between McMahan and Atkinson, there had been no final division.    The defendant relied chiefly upon the proposition that McMahan was estopped from asserting that Atkinson was a cropper, because he had taken from the latter and transferred to the defendant the instrument stating that the relation between them was that of landlord and tenant, and had also, in the fall of the year, sued out a distress warrant against Atkinson, alleging that he was a tenant.    It appears, however, that this distress warrant was voluntarily dismissed by McMahan upon getting the advice of counsel to the effect that the relationship was not that of landlord and tenant, but that of landlord and cropper.    The defendant further pleaded, by way of abatement, that McMahan had previously instituted a suit against him for the same cotton; that the same had been dismissed and the costs had not been paid upon the renewal of the action.    He also pleaded, by way of abatement, that the costs in the distress-warrant case and a claim case which grew out of it had not been paid.    It appeared that upon the dismissal of the two suits mentioned, McMahan had gone to the clerk in one instance, and to the justice of the peace in the other, had asked for a bill of costs, and, upon receiving it, had paid it, though it did develop that there was a small amount of costs unpaid—a matter to which McMahan's attention was not called until after the present suit was filed.

We will take up the points in somewhat inverse order.    The plea in abatement, so far as it related to the non-payment of the costs in the distress proceedings and the claim case which grew out of it, was plainly not well taken.    The present action was in no proper sense a renewal of those suits.    As to the non-payment of the costs in the former action of trover between the same parties, we think that when the plaintiff went to the clerk, received the bill of costs, and paid it in full, he did all that either law or good faith required, and that, under the particular circumstances, there was no error in finding against the plea in abatement.

If the amounts paid out of the crops to Wilkins by Atkinson had

not amounted to enough to discharge the indebtedness of $300 represented by the written lien transferred by McMahan to Wilkins, we think that McMahan would have been estopped from asserting any title to the crops (so far as was necessary to pay off the $300), on the theory that Atkinson was his cropper and not his tenant. However, as it appears that Wilkins received an amount in excess of the $300, and as it appears that he was not deceived in the transaction by any actual belief that Atkinson was a tenant, we see no reason for the application of any estoppel against McMahan's asserting his title to the crops against Wilkins's holding it as a payment on open account. The jury's verdict is consistent with this view of the case, and appears to be a correct solution of the problem presented by the special state of facts.

Counsel for Wilkins insists also that the suing out of the distress warrant by McMahan amounted to a solemn admission in judicio, and precluded him from thereafter asserting that Atkinson was merely a cropper. To this proceeding, it must be remembered, Wilkins was not made a party by McMahan; and, while the fact of McMahan's having sued out a distress warrant had probative value as an admission, it was not a conclusive admission, and was subject to explanation. *Sims* v. *Dorsey,* 61 *Ga.* 488; *Evans* v. *Napier,* 111 *Ga.* 105 (36 S. E. 426). The court properly allowed McMahan to explain the admission implied against him by reason of his having sued out the distress warrant, by showing that he had sued it out in ignorance of the law, and that he promptly dismissed it so soon as he had received advice of counsel upon the actual facts of the case. After a careful review of the record, we find no sufficient reason for reversing the judgment.

*Judgment affirmed.*