## 4376. MARIL v. BOSWELL et al.

1. On the back of a lease contract, signed by the person named therein as lessee, was the following endorsement, signed by another person: "In consideration of this lease and of $1.00, I bind myself, my heirs, to faithfully carry out this lease in all its terms." *Held:* This writing, prima facie, imports a contract of guaranty; but parol evidence was admissible to show the true relationship of the party making it to the original contract of lease, and that, notwithstanding the recital therein, he did not in fact receive an independent consideration, and that his contract was that of a surety.

2. Where the plaintiff dismissed his suit and subsequently commenced another suit for the same cause of action, and it appeared that, before commencing the second suit, he paid in good faith all the costs that had accrued in the previous suit, as demanded of him, as shown by the judgment entered for the costs, and according to the itemized statement of the costs, made out and presented to him by the justice in whose court the first suit was filed and dismissed, and that if he had failed to pay any item of costs accruing in the first suit, it was due to an omission of the justice, in not including it in the judgment for the costs or in the statement of the items of the costs, as made out by the justice, and not to any fault of the plaintiff, a judgment dismissing the second suit, on a plea in abatement based on a failure to pay all the costs of the first suit, was not authorized.

DECIDED DECEMBER 21, 1912.

Complaint; from city court of Savannah—Judge Davis Freeman. June 25, 1912.

*Morris H. Bernstein, David S. Atkinson,* for plaintiff.
*Shelby Myrick,* for defendants.

HILL, C. J. The plaintiff in error brought suit against Boswell, as principal, and Jones, as surety, for $340, besides interest, on a rental contract. The rental contract was signed by Boswell, as lessee, and contained an obligation to pay $85 per month for the premises described therein. Jones executed, on the back of this lease, a contract in the following language: "In consideration of this lease and of $1.00, I bind myself, my heirs, to faithfully carry out this lease in all its terms." This contract was executed under seal. Each of the defendants demurred to the petition, and they filed also a joint plea in abatement. The demurrer of Jones was, in substance, to the effect that the petition showed upon its face that if he occupied any relation to the contract, it was that of a guarantor, and not of a surety, and as a guarantor he could not be sued in the same action with the maker of the contract. To meet this demurrer the plaintiff tendered an amendment alleging, in

substance, that Jones signed the rental contract really as surety for the principal maker, Boswell, and as joint contractor, without any consideration or benefit flowing to him (Jones), and without any consideration except the credit extended to Boswell in the said contract, it being the intention of all the parties to the contract that Jones should be a surety and joint contractor, and not a guarantor within the strict meaning of the term, irrespective of the words used therein. This amendment was objected to, and the court refused to allow it, and sustained the demurrer and dismissed the action as to Jones; and the plaintiff duly excepted. Boswell's demurrer was overruled.

Subsequently the plea in abatement was submitted to the court, to be determined without the intervention of a jury, on the following statement of facts: Previous to this suit, the plaintiff had sued these defendants in four separate suits in a justice's court, for rent for four months, each suit being for $85, as rent for one month. Summons of garnishment in these four suits was duly issued and served upon the Pittsburgh Plate Glass Company, alleged to be a debtor of the defendant Jones. The four suits came on for trial in the justice's court, and, by agreement, were consolidated, but before the trial an order was taken, striking Jones as party defendant, and leaving the suits pending against Boswell alone. The justice rendered a judgment against Boswell in each case, for the full amount sued for,—principal, interest, and costs. Boswell thereupon filed an appeal to a jury in the superior court, but the appeal cases were not sent up to the superior court, each of the cases being dismissed by the plaintiff. The plaintiff paid the justice of the peace all the costs demanded of him by the justice in each of the four cases, according to the items of costs made out by the justice in each case. The plea in abatement alleges, in substance, that the suit in the city court for $340 was identical in all respects with the four separate suits previously brought in the justice's court for $85 each; the parties being the same and the amount of the second suit being the same as the aggregate amount of the first four suits. The plea sets forth all the proceedings that were had before the justice on the trial of the first four cases, and alleges that the plaintiff "did not first actually pay to the said justice of the peace the full, complete, and entire amount of the costs of the said four suits and the four said garnishment pro-

ceedings, before he filed the present suit in the city court of Savannah," and, therefore, the defendants pray "that the present suit against them in this court abate." On the hearing of this plea both the plaintiff and the defendants introduced in evidence cost bills, made out apparently according to the fee bill. The plaintiff's evidence showed that he had paid more than the costs due on the four suits, and the defendants' evidence showed that he lacked about twelve dollars of paying the full amount due the justice and constable in the four suits. The court sustained the plea in abatement and dismissed the suit, solely upon the ground that the plaintiff had not complied with the statute by payment of all the costs due in the four suits before bringing his suit for the same cause of action in the city court; and to this ruling the plaintiff excepted.

Two questions are therefore presented for decision by this court: (1) the question made by the exceptions to the refusal to allow the amendment and to the judgment sustaining the demurrer filed by Jones; and (2) that made by the exceptions to the judgment sustaining the plea in abatement and dismissing the suit. Of course, if this court agreed with the view of the trial judge as to the second question, a decision on the first question would be unnecessary; but, in view of the fact that this court has come to the conclusion that he erred in sustaining the plea in abatement, it becomes necessary also to consider the first assignment of error.

1. We do not think the amendment offered to meet the demurrer filed by Jones was necessary, as the true relation of Jones to the rental contract was clearly raised by the original petition, containing as an exhibit the rental contract. It is alleged in the original petition that the plaintiff contracted with Boswell as principal, and with Jones as surety; and the language used by Jones, in the agreement made by him and written on the back of the lease contract, contained nothing that was necessarily inconsistent with that allegation or with that relationship. The form of the contract made by Jones was wholly immaterial, provided the fact of his suretyship existed; and, under this allegation, parol evidence was admissible to prove the true relation of Jones to the rental contract, and, in fact, that the relation was one of suretyship, and not that of guarantor. It is insisted on the part of Jones that the recital by him that he executed the contract "in consideration of this lease and of $1," made him a guarantor, and not a surety,

since this recital was that the consideration of his contract was received as an independent consideration by him, and the true test laid down by the code, for determining whether a contract is one of suretyship or guaranty, is that a contract of suretyship is one where the consideration flows exclusively to the principal maker of the contract, and a contract of guaranty is one where there is some benefit flowing to the guarantor. Civil Code (1910), § 3538. As was said by the Supreme Court in *Manry* v. *Waxelbaum Co.*, 108 *Ga.* 14, 17 (33 S. E. 701, 703), this is only one of the differences between a contract of suretyship and one of guaranty. In that case the Supreme Court points out another difference: "A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the principal. Before an action can be maintained against a guarantor, therefore, it must be shown that the principal is unable to perform. The surety says to the creditor, if your debtor will not pay, I will. The guarantor says to him, proceed first against the principal, and if he should not be able to pay, then you may proceed against me. It has been said that there is no instance in the books of a guarantor contracting jointly with his principal. Much has been written upon this subject, but we think the above expresses the true distinction between the two classes of contracts."

Bearing this distinction in mind, it seems to us that the language used by Jones in his agreement is susceptible of the construction that he bound himself jointly with the principal maker; for he does not state that if the principal maker fails to pay the rent, he will pay it, but "in consideration of this lease and of $1, I bind myself, my heirs, to faithfully carry out this lease in all its terms." In other words, it appears that he became a joint obligor with Boswell, the principal maker, and is bound not only as a surety, but really as a joint obligor, by the express terms of his agreement. So far as the writer is concerned, as he has said in the case of *Small Co.* v. *Claxton*, 1 *Ga. App.* 83 (57 S. E. 977), the distinction between a contract of suretyship and one of guaranty is purely fan-

ciful and technical. In my opinion there are contracts of suretyship where an independent consideration flows to the surety; such as judicial and official bonds, and contracts of indemnity, now so generally used in commercial and official transactions; and I do not see any substantial reason in law why a guarantor could not be sued like a surety, in the same suit with the principal maker; for in either case the filing of the suit is a declaration that the principal maker can not or will not pay the debt; and in the case of a guaranty it seems to be unjust and an unnecessary hardship to require the plaintiff to sue the principal maker and exhaust his legal remedies against him before proceeding against the guarantor. In my opinion, he should have a right to proceed against both the principal maker and the guarantor in the same suit, and in that suit prove that the principal maker is insolvent and will not or can not pay as he undertook to do.

Irrespective of this question, however, it is well settled in this State, and also in many other jurisdictions, that parol evidence is always admissible to show the real consideration of a contract,— to show whether it is a contract of suretyship, or whether it is a contract of guaranty. In the case of *Burke* v. *Napier,* 106 *Ga.* 327, 328 (32 S. E. 134), the question was ably discussed by Mr. Justice Fish, the present Chief Justice, and it was held that, although the contract recited a particular consideration, parol evidence was admissible to show that in fact it was made upon a different consideration than that expressed. And in the recent case of *Baggs* v. *Funderburke,* 11 *Ga. App.* 173 (74 S. E. 937), this court held that "a contract on the back of a promissory note, signed by one other than the payee thereof and in the following words, 'For value received, we hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest at the rate of 8 per cent. per annum until paid, waiving demand, notice of non-payment and protest,' prima facie imports a contract of guaranty," but that "parol evidence is  .  .  admissible to show that the party signing the contract received no independent consideration, and that the contract is in fact one of suretyship." It seems to us that this decision is controlling on the first question raised by this record, and that the ruling of the learned trial judge in sustaining the demurrer filed by Jones was erroneous.

Counsel for defendants in error endeavor to distinguish the *Baggs*

case, supra, from the present case, on the facts, in that the contract of Baggs was an endorsement on a promissory note, and the contract in question here is an endorsement or agreement made on the back of a rent contract. We can not see any substantial difference in the character of the two contracts. Indeed, we think that the reason of the rule excluding parol evidence to vary the terms of a written contract would apply more strongly in favor of the maker of a promissory note than in contracts of a different character; for certainly a promissory note, with all endorsements thereon, especially if it be under seal, is as solemn an instrument, containing as important obligations, as any other contract, and the recitals made therein should be held to be as fixed and determinate as those contained · in any other character of contract, and probably more so, in view of the fact that such instruments are so generally and largely used in commercial transactions. Recurring for a moment to the language of Jones in this rent contract, it is clear that while the language may import a contract of guaranty, yet the real relationship of the parties does not clearly appear, and this ambiguity can be explained by parol testimony. In other words, the character of this contract, whether of suretyship or guaranty, not clearly appearing on the face of the contract itself, may be proved by parol. Civil Code (1910), § 3556. A case very much in point is that of Taylor *v.* Wightman, 51 Iowa, 411 (1 N. W. 607). In that case the guaranty expressed a consideration of one dollar. The petition averred no consideration, except as contained in the instrument set out. The answer denied any consideration whatever. It was held "that evidence of the actual consideration offered by plaintiff was proper, and that he was not bound by the recital;" that the recital of $1 consideration could be contradicted by parol testimony, and that this was not inconsistent with the general rule that parol testimony is not admissible to vary the contents of written instruments. We might cite many other cases in point, but we think it unnecessary, as we are of the opinion that the decision of this court in the *Baggs* case, and that of the Supreme Court in the *Burke* case, supra, are controlling.

2. Under the admitted facts, we think the court erred in sustaining the plea in abatement. It is true that under the Civil Code (1910), §§ 5625, 5626, when any suit is dismissed and the plaintiff desires to recommence the suit, he can only do so on pay-

ment of all the costs, or by filing with his second petition an affidavit that, owing to his poverty, he is unable to pay the costs; and that failure to pay the costs or file the affidavit may be pleaded in defense of the action. *Wright* v. *Jett,* 120 *Ga.* 995 (48 S. E. 345); *McLaurin* v. *Fields,* 4 *Ga. App.* 688 (62 S. E. 114); *Williams* v. *Holland,* 9 *Ga. App.* 494 (71 S. E. 760). And it may be conceded that, as held in the *McLaurin* case, supra, one of the reasons for this rule is that the defendant in the first suit has the right to have the costs of the previous suit paid, as a condition precedent to the second suit; and this applies whether such costs are due to the officers of the court, or to the witnesses, or to the opposite party, and applies whether a formal judgment has been entered for the costs or not.

It is difficult to tell, from the evidence, whether the plaintiff had paid all the costs in the previous suits in the justice's court, before commencing his suit in the city court, but there is no question as to two facts: first, he paid all costs that had been demanded of him by the justice of the peace or that were contained in the itemized statement of the costs which was a part of the judgment entered by the justice of the peace; and there was no effort on the part of the plaintiff to avoid the payment of costs, but he in good faith paid all the costs that had accrued in the justice's court, so far as he knew, or so far as had been demanded of him. The Civil Code (1910), § 5992, provides: "When a case is disposed of, the costs of the same, including fees of witnesses, shall be included in the judgment against the party dismissing, being nonsuited, or cast; and it shall be the duty of the clerk of any court in this State, and of any justice of the peace, or other officer who may issue an execution, to indorse on said execution, at the time it is issued, the date and amount of the judgment, the items of the bill of cost (written in words), and the amount of each item distinctly stated in figures; and no costs, or items of costs, shall in any case be demanded by any such officer, which are not itemized and indorsed as herein provided." In the present case, the justice entered a judgment for the costs. The entry from his docket, which was in evidence, showed that the costs were made a part of the judgment in each case, and that there was an itemized statement of the costs accruing in each case. Presumptively this itemized statement of the costs was correct. All of these costs shown by the

judgment and the itemized statement of the costs, in fact more than the amount, were paid by the plaintiff before bringing his second suit. Logically, if a justice of the peace can not demand any costs except such as are itemized in accordance with the statute above quoted, it would seem that this itemized statement, especially when it has been made a part of the judgment in the case, would be conclusive on the subject of costs. *Holmes* v. *Huguley,* 136 *Ga.* 758, 761 (72 S. E. 38). It would be unjust to the plaintiff, when the evidence shows that he had made every effort to comply with the law in regard to payment of the costs and had paid all the costs contained in the itemized statement of the costs as included in the judgment, that his second suit should be dismissed because he had not complied with the statute relating to the payment of costs in the previous suit. It would be unjust, it seems to us, that the plaintiff's suit should be dismissed, not because of any fault of his, but because the justice of the peace may have overlooked some item in his statement of the costs, and especially when all the evidence proved a bona fide effort on the part of the plaintiff to pay all the costs in the previous suit.

In *Wilkins* v. *McMahan,* 8 *Ga. App.* 182 (68 S. E. 941) "upon the trial of a plea in abatement, filed upon the ground that the plaintiff had reinstituted his action after dismissal without payment of the costs due in the first suit, it appeared that the plaintiff went to the clerk of the court in which the suit was pending and paid what the clerk said was the amount of the costs and took a receipt for it, and was not informed of any additional costs being due until after the second suit had been brought, when, for the first time, it appeared that there was a small item of costs which had not been included in the bill so rendered by the clerk. *Held,* that a finding against the plea in abatement was authorized, there being nothing to impeach the good faith of the transaction." The principle there announced is applicable to the present case. The plaintiff paid all the costs that had been demanded of him by the justice, all the costs that had been itemized by the justice, and all the costs which were included in the judgment for the costs. Neither the justice nor any officer of the court demanded of him any additional costs, and neither the justice nor any officer of the court contended that there was an omission of any item of costs for which judgment had been rendered. It would be unjust to the

plaintiff that his suit should be dismissed because he had failed to pay certain items of costs; and especially is this true where it is not clear that the plaintiff was in fact liable for these items of costs, and no demand had ever been made on him for them, either by the justice or the constable, and his attention had not been called to the fact that these items had not been paid, until after the second suit was filed. *Judgment reversed.*